IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | CRIMINAL NO. 3:11-245-CMC |
| v. | **ORDER** |
| Marvin Dennis, | |
| Defendant. | |

Defendant filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction for a violation of 18 U.S.C. § 924(c).[1] ECF No. 617. The Government filed a motion to dismiss or for summary judgment. ECF No. 629. Defendant filed a response in opposition. ECF No. 632.

**I. Background**

On February 19, 2013, Defendant was charged in a Superseding Indictment with the following counts: Count 1) conspiracy to commit Hobbs Act Robbery; Count 2) Hobbs Act Robbery "as principals, aiders and abettors and as co-participants in jointly undertaken criminal activity"; Count 3) possession with intent to distribute a quantity of marijuana "as principals, aiders and abettors and as co-participants in jointly undertaken criminal activity"; Count 4) using and carrying of a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime and a crime of violence "as principals, aiders and abettors and as co-participants in jointly undertaken criminal activity"; and Count 9) felon in possession of a firearm. ECF No. 3.

---

[1] Defendant sought and was granted permission from the Fourth Circuit to file this successive § 2255 motion. ECF No. 616.

On July 11, 2011, Defendant pled guilty, pursuant to an Amended Plea Agreement, to Counts 1 and 4 of the Indictment: conspiracy to commit Hobbs Act Robbery and a violation of § 924(c). ECF No. 330. The Plea Agreement noted Count 4, the § 924(c) count, charged "using or carrying of a firearm in connection or furtherance of a crime of violence or a drug trafficking offense and causing discharge of such firearm." *Id.* at ¶ 1.[2] Judgment was entered on October 6, 2011. ECF No. 429. Defendant was sentenced to a total term of 360 months, consisting of 240 months on Count 1 and 120 months on Count 4, consecutive. *Id.* Defendant did not appeal his conviction or sentence, and a previous motion under § 2255 was unsuccessful (ECF No. 477).

## II. 18 U.S.C. § 924(c)

Title 18 U.S.C. § 924(c) provides that a defendant shall be subject to a consecutive sentence if he or she, "during and in relation to any crime of violence or drug trafficking crime. . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . . ." 18 U.S.C. § 924(c)(1)(A).

A "drug trafficking crime" for purposes of § 924(c) means "any felony punishable under the Controlled Substances Act (21 U.S.C. §§ 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951 et seq.), or chapter 705 of title 46." § 924(c)(2). The statute defines a "crime of violence" as:

> an offense that is a felony and –
> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

---

[2] The court notes the "a crime of violence or" language was a handwritten addition to the Plea Agreement. *Id.*

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[3]

§ 924(c)(3).

The Fourth Circuit has held conspiracy to commit Hobbs Act Robbery cannot qualify as a crime of violence under the force clause of §924(c)(3)(A). *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019). The *Simms* court also concluded the residual clause of §924(c)(3)(B) is unconstitutionally vague and therefore void. *Id.* at 236.

On June 24, 2019, the Supreme Court also decided the residual clause of § 924(c)(3)(B) is void for vagueness. *United States v. Davis*, 139 S.Ct. 2319, 2336 (2019). In doing so, the Court rejected application of a case-specific approach for § 924(c) and applied the categorical approach.[4] *Id.* at 2327-2332.

Since *Davis*, the Fourth Circuit has also held attempted Hobbs Act Robbery is not a crime of violence under the force clause. *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020), cert. granted, No. 20-1459, 2021 WL 2742792 (U.S. July 2, 2021).[5] However, aiding and abetting a Hobbs Act Robbery and substantive Hobbs Act Robbery do qualify as crimes of violence under § 924(c)'s force clause, and are therefore proper underlying offenses for a § 924(c) conviction.

---

[3] § 924(c)(3)(A) is known as the "force clause" or "elements clause" (referred to herein as the force clause) and § 924(c)(3)(B) is known as the "residual clause."

[4] *Davis* did not address the force clause issue, as the Fourth Circuit did in *Simms*, because the lower court determined conspiracy to commit Hobbs Act Robbery did not qualify under the force clause, and this holding was not appealed. *Id.* at 2325.

[5] There is a circuit split among the Courts of Appeals on this issue, and the Supreme Court has granted certiorari to consider it. *United States v. Taylor*, No. 20-1459, 2021 WL 2742792, at *1 (U.S. July 2, 2021) (granting certiorari in *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020).

*United States v. Mathis*, 932 F.3d 242, 265-66 (4th Cir. 2019) (holding Hobbs Act Robbery itself is a crime of violence); *United States v. Ali*, 991 F.3d 561, 574 (holding aiding and abetting is merely a way to describe defendant's conduct, but has the exact same elements as the principal offense; therefore aiding and abetting Hobbs Act Robbery is also a crime of violence).

### III. Discussion

Defendant argues his § 924(c) conviction in Count 4 was predicated on the conspiracy to commit Hobbs Act Robbery conviction in Count 1, which cannot serve as an underlying offense as it is not a crime of violence as defined in § 924(c)(3)(A), the "force clause," and §924(c)(3)(B) is invalid, and thus his sentence is unconstitutional. ECF No. 617. Defendant further argues conspiracy to commit Hobbs Act Robbery "is no longer conduct for which petitioner may be punished." *Id.* at 3.[6] He also contends his appeal waiver should not be enforced, and that he can demonstrate actual innocence. *Id.*

The Government has moved for summary judgment, arguing Defendant's claim is barred by his valid guilty plea and appeal waiver, he has procedurally defaulted his claim, and his argument fails on the merits as the § 924(c) charge was based on a drug trafficking crime as well as a crime of violence. ECF No. 629. Defendant responded, arguing "there is a question as to, if the petitioner understood the offense of the drug trafficking" and raises ineffective assistance of counsel. ECF No. 632 at 2. He then discusses stacking of § 924(c) sentences,[7] and argues there

---

[6] The court notes this is an incorrect statement of the law after *Davis* and *Simms*. While conspiracy to commit Hobbs Act Robbery can no longer serve as an underlying offense for a § 924(c) conviction, it is still a valid criminal offense and offenders can and are sentenced under it legally.

[7] Defendant did not raise these arguments in his motion, but only on reply. In addition, there is no §924(c) "stack" in this case, as Defendant was convicted of only one violation of §924(c).

4

must be a "nexus" between the firearm and the drug trafficking operation in order for the use of a firearm to be in connection with a drug trafficking crime. Essentially he argues it was not proved that the firearm was used in connection with a drug trafficking crime.

      *a. Waiver*

The court takes up the enforceability of the § 2255 waiver provision in the Amended Plea Agreement as its first order of business. Save for claims of ineffective assistance of counsel or prosecutorial misconduct, the provision specifies Defendant "waives the right to contest either [his § 924(c)] conviction or the sentence in . . . any proceedings under 28 U.S.C. § 2255," in exchange for the concessions made by the Government in the Amended Plea Agreement. ECF No. 330 at 8. This waiver is enforceable so long as it is valid, Defendant's challenge to his § 924(c) conviction falls within its scope, and its enforcement would not result in a miscarriage of justice. *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016). Enforcement would result in a miscarriage of justice if Defendant can show he is actually innocent of violating § 924(c) as alleged in Count 4. *Id.* (reaching the merits of defendant's § 2255 motion attacking his § 922(g) conviction despite presence of § 2255 waiver provision in plea agreement, because defendant had made a valid claim of actual innocence with respect to his § 922(g) conviction).

Here, the § 2255 waiver provision in the Amended Plea Agreement is valid. The record establishes Defendant knowingly and intelligently waived his right to challenge his § 924(c) conviction and sentence in a § 2255 motion. During the plea colloquy, Defendant affirmed he had read and fully discussed the Amended Plea Agreement with his lawyer before signing it, he understood its terms, and he had no questions about it. ECF No. 469 at 30–31, 46. Further, the court specifically reviewed the § 2255 waiver provision with Defendant, including specifying its location in paragraph 12 of the Amended Plea Agreement, and confirmed Defendant understood

5

its effect via a question-and-answer exchange. *Id.* at 45–46. Accordingly, the court concludes the § 2255 waiver provision is valid.

The court finds Defendant's challenge to his § 924(c) conviction falls within the scope of the § 2255 waiver provision. The crux of Defendant's claim in his instant § 2255 motion is as follows: conspiracy to commit Hobbs Act robbery cannot serve as a § 924(c) predicate offense (because it does not constitute a crime of violence under § 924(c)(3)(A)'s force clause, and § 924(c)(3)(B)'s residual clause is unconstitutionally vague), and, therefore, his conviction on Count 4 must be vacated. Defendant's claim falls squarely within the scope of the § 2255 waiver provision in the Amended Plea Agreement as it is a direct attack on his § 924(c) conviction and it sounds neither in allegations of ineffective assistance of counsel nor prosecutorial misconduct. Seemingly aware of this fact, Defendant offers the following in his Reply in response to the Government's expressed intention to invoke the § 2255 waiver provision:

> [Defendant] plead guilty to the alleged offense due to his counsel explaining that he was pleading guilty to the robbery. There is a question as to, if [Defendant] understood the offense of the drug trafficking. Even though [Defendant] pleaded out to the charges, there is a question as to if [Defendant] was given effective assistance of counsel when he plead to these charges. Did his counsel even explain to Defendant the charges that he was going to plead guilty to?

ECF No. 632 at 2. This response amounts to nothing more than a failed attempt to kick up enough dust to create the appearance of an ineffective assistance of counsel claim when one does not actually exist so as to situate Defendant's direct attack on his § 924(c) claim within the waiver's exception for ineffective assistance of counsel claims. The court easily sees through the dust as defendant does not state a substantive ineffective assistance of counsel claim. Rather, he merely raises a few hazy questions, which he leaves completely unanswered.

Moreover, as will be fully fleshed out later in this Order, *see infra* pp. 11-15, the record conclusively establishes Defendant knew the charges to which he would plead guilty. The court took great care to make certain Defendant understood two ways existed by which the Government could prove him guilty of Count 4, *i.e.*, the § 924(c) offense. For example, directly addressing Defendant by name, the court declared it "want[ed] to make sure he underst[ood]" the Amended Plea Agreement had been changed "to indicate that there are two ways [the Government] can prove the gun charge here." ECF No. 469 at 43. The court went on to state the two ways consisted of proof "a gun was possessed in connection with or used and carried in connection with or in furtherance of a drug trafficking crime" or proof "that you yourself or that you aided and abetted in a crime of violence." *Id.* On top of this, the district court read Count 4 of the Indictment aloud to Defendant, which plainly set forth the alternative predicate crimes in support of Count 4, *id.* at 63, and Defendant initialed the handwritten portion of the Amended Plea Agreement adding in "a crime of violence" as an alternative way for the Government to prove Count 4, ECF 330 at 1.

Finally, enforcement of this waiver would not result in a miscarriage of justice. According to Defendant, the inability of conspiracy to commit Hobbs Act Robbery to serve as a predicate crime for his § 924(c) offense, renders him actually innocent of his § 924(c) offense, and thereby renders enforcement of the § 2255 waiver provision in this case a miscarriage of justice. While the court tracks Defendant's logic, it has a false premise, the effect of which eviscerates any aid such logic could afford Defendant. As thoroughly set forth below, *see infra* pp. 15-17, although conspiracy to commit Hobbs Act Robbery can no longer serve as a predicate crime for a § 924(c) offense, the record unequivocally establishes a drug trafficking crime does. Accordingly, Defendant is not actually innocent of violating § 924(c) as alleged in Count 4. Thus, no miscarriage of justice will ensue by enforcing the § 2255 waiver in the Amended Plea Agreement

7

to bar Defendant from challenging his § 924(c) claim based upon the failure of conspiracy to commit Hobbs Act Robbery to serve as a predicate crime.

In sum, the court concludes the § 2255 waiver provision in the Amended Plea Agreement is enforceable, and therefore, the court hereby enforces it as raised by the Government. Accordingly, the court grants the Government's motion to dismiss Defendant's instant § 2255 motion as barred by the § 2255 waiver provision in his Amended Plea Agreement. However, in an abundance of caution, the court will consider the Government's arguments on procedural default and the merits.

      b. *Procedural Default*

The court's enforcement of the § 2255 waiver provision in the Amended Plea Agreement and concomitant dismissal of Defendant's § 2255 motion independently disposes of this case. However, for the sake of thoroughness, the court proceeds to consider the Government's arguments Defendant procedurally defaulted his *Simms/Davis* claim by failing to raise it on direct review, and Defendant cannot establish cause and prejudice or his actual innocence to excuse the default. ECF No. 629-1 at 8–17.

The court agrees with the Government Defendant procedurally defaulted his *Simms/Davis* claim by failing to challenge on direct review the validity of his guilty plea to Count 4 on the basis conspiracy to commit Hobbs Act robbery cannot serve as a § 924(c) predicate offense because it does not constitute a crime of violence under § 924(c)(3)(A)'s force clause, and § 924(c)(3)(B)'s residual clause is unconstitutionally vague. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (defendant procedurally defaults claim by failing to raise it on direct review). Thus, Defendant may raise his *Simms/Davis* claim on collateral review in a §2255 motion only if he can first demonstrate either cause for the procedural default and resulting actual prejudice or that a

miscarriage of justice would result if the court refused to entertain his collateral attack. *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) ("In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."), *overruled in part on other grounds by Dretke v. Haley*, 541 U.S. 386 (2004). To demonstrate a miscarriage of justice, Defendant would have to show, by clear and convincing evidence, he is actually innocent of violating § 924(c) as alleged in Count 4. *Id.* at 493. Here, Defendant has demonstrated neither cause, actual prejudice, nor actual innocence.

To demonstrate "[t]he existence of cause for a procedural default," the prisoner must show some objective external impediment, "such as the novelty of the claim or a denial of effective assistance of counsel," prevented the claim from being raised below. *Mikalajunas*, 186 F.3d at 493. A claim is considered novel for purposes of a cause analysis when "its legal basis is not reasonably available to counsel . . . ." *Reed v. Ross*, 468 U.S. 1, 16 (1984). This is a daunting standard, as "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray,* 477 U.S. 527, 537 (1986). To establish cause for default based upon ineffective assistance of counsel, Defendant must show his counsel's "performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." *Mikalajunas*, 186 F.3d at 493.

Here, Defendant makes no argument that some objective external impediment prevented the raising of a *Simms/Davis*-type claim in challenge to his § 924(c) conviction at the time for direct review in his case. Rather, generously construing Defendant's *pro se* reply to the Government's assertion of procedural default, Defendant declares *Simms/Davis* wrought a change

9

in the law, and that change should be enough to demonstrate cause. Setting aside the fact a change in the law in and of itself is insufficient to demonstrate cause in a cause-and-prejudice analysis, the court need not decide whether Defendant has demonstrated cause here because, assuming *arguendo* he has, he most clearly cannot meet the prejudice prong, which requires a showing of actual prejudice. *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

To show actual prejudice on collateral review, a defendant must "demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). Thus, to show actual prejudice on collateral review, Defendant bears the burden of demonstrating the *Simms*/*Davis* "error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher*, 126 F.3d at 572 (quoting *Murray*, 477 U.S. at 494). For the same reasons set forth fully and in detail later in this Order, *see infra* pp.15-17, the court holds Defendant has not demonstrated the *Simms*/*Davis* error in his case worked to his actual and substantial disadvantage. Defendant's § 924(c) conviction remains properly predicated on a drug trafficking crime, and therefore Defendant's claim of actual prejudice fails for the simple reason this alternate predicate crime in support of his § 924(c) offense is not affected by *Simms* or *Davis*. For identical reasons, Defendant has not demonstrated actual prejudice flowing from the *Simms/Davis* error in his case, *see infra* pp.15-17, Defendant has not demonstrated his actual innocence of violating § 924(c) as alleged in Count 4, as it remains predicated on a valid drug trafficking crime. Accordingly, Defendant procedurally defaulted his *Simms/Davis* claim and fails to demonstrate any valid basis to excuse the default.

### c. Merits Analysis

Finally, the court addresses the merits and finds Defendant's § 924(c) conviction remains valid because it was also predicated on a drug trafficking crime that remains a proper underlying offense for a § 924(c) conviction. Even though conspiracy to commit Hobbs Act Robbery no longer qualifies as a crime of violence under the now invalidated residual clause or under the force clause of § 924(c), the § 924(c) conviction stands as also based on an underlying drug trafficking crime.

Defendant was charged with knowingly using or carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime **and** a crime of violence. ECF No. 3 at 3 ("That on or about April 6, 2010, in the District of South Carolina, the defendants . . . knowingly did use and carry a firearm during and in relation to, and did possess a firearm in furtherance of, a drug trafficking crime and a crime of violence, both of which are felonies prosecutable in a court of the United States, and did cause said firearm to be discharged . . ."). His Plea Agreement reflects both bases for §924(c), though he did not plead guilty to a drug trafficking crime. ECF No. 330 at ¶ 1 ("The Defendant agrees to plead guilty to Counts 1 of the Indictment now pending, which charges 'Conspiracy to Commit Hobbs Act Robbery,' . . . and Count 4 of the Indictment now pending, which charges 'using or possessing of a firearm in connection or furtherance of a crime of violence or a drug trafficking offense and causing discharge of said firearm. . . ."). [8]

At his change of plea hearing, the court explained the charge in Count 4 as follows:

---

[8] As noted above, the "crime of violence" language was added to the Plea Agreement in handwriting and initialed by the Defendant. *Id.*

11

The court: Count 4 is the 924(c) firearms charge. They would have to be able to prove that you or someone that you aided and abetted committed a drug trafficking crime and that during that event you or someone that you aided or abetted knowingly carried, used or carried a firearm during and in relation to or possessed a firearm in furtherance of a drug trafficking crime. There is a reference to a crime of violence there, but I assume you're going with drug trafficking crime because of the number 1. Is that right, Mr. Richardson?

AUSA Richardson: Your Honor, number 1 is actually a typo on my behalf. It should, consistent with everything else, include a crime of violence. But I think in this instance, Your Honor, I think its probably simpler to just use the drug trafficking crime here. I don't think it matters.

The court: Every time you have a 924(c) which is a one charge like this, you have to have an underlying either crime of violence or a drug trafficking crime. Okay. They allege both against you. Okay. And what they're doing now is saying is that they will go with the drug trafficking crime as the underlying crime to the gun charge. Okay. So what you're going to do is, the proof they're going to offer to show that they can prove the elements of this crime is going to relate to the underlying drug trafficking crime.

… [discussion of amendment to Plea Agreement to include crime of violence language in the § 924(c) count] …

Mr. Dennis, basically I want to make sure you understand this. The change that we have made is to indicate that there are two ways that they can prove the gun charge here. They can prove that a gun was possessed in connection with or used and carried in connection with or in furtherance of a drug trafficking crime. And in this case, because you didn't actually possess any of the drugs, the theory is that you aided and abetted others who were possessing the drugs or trying to possess the drugs or in constructive possession of the drugs. This is the marijuana we're talking about both at Santee and then later in Sumter. Or they can prove that you yourself or that you aided and abetted in a crime of violence. In this case the crime of violence is Count 1 which is the conspiracy to commit the Hobbs Act armed robbery that took place in Sumter because you were not – I don't know if you take the position that he was also in furtherance of conspiracy on the Hobbs Act armed robbery I guess at both places.

AUSA Richardson: Your Honor, the Hobbs Act is both Santee and Sumter. . . It's not limited to Sumter. The two don't – it is part of one – that is one course of conduct, one robbery.

The court: Okay. Do you understand that, Mr. Dennis?

Defendant: Yes, ma'am.

ECF No. 469 at 36-44.

The Government summarized the evidence against Defendant:

12

> AUSA Richardson: Your Honor, according to the cooperating witnesses, Mr. Dennis agreed with William Jenkins and Jermaine Porcher to aid them in the robbing of Lashawn Gillard of between 39 and 50 pounds of marijuana in Santee, South Carolina.
>
> Mr. Dennis followed Jenkins and Porcher who in turn were following Howard Logan and Lake Vaughn to Santee and ultimately to the scene of the robbery which was down a dirt road in Santee. During the course of the robbery, Mr. Porcher fired a shot to intimidate Mr. Gillard and another individual who brought the marijuana, and eventually Mr. Logan and Lake Vaughn grabbed the marijuana and left the location.
>
> After Gillard was robbed at gunpoint, Mr. Dennis returned to Sumter and eventually along with Mr. William Jenkins, Jermaine Porcher and others went to, drove to the Holiday Inn Express to find Howard Logan who had the marijuana. At the Holiday Inn Express a shootout occurred in which multiple individuals from each side exchanged gunfire. Crime scene investigation found a variety of shell cases, firearms, a shotgun wadding and what was tested to be approximately 39 pounds of marijuana at the scene. Additionally, Lake Vaughn was shot in the neck, and Howard Logan was shot in the chest and the arms. Arm.
>
> The court: All right. And what is the evidence concerning Mr. Dennis's use or carrying a firearm or possession of a firearm in furtherance of or in connection with?
>
> AUSA Richardson: Your Honor, he was part of a group of individuals who agreed to engage in this Hobbs Act robbery and possession of the marijuana. He both individually possessed a firearm; that is, a shotgun, and also aided and abetted others' possession and use of firearms both in Santee and in Sumter.

*Id.* at 63-65. The court inquired of Defendant:

> The court: Mr. Dennis, I'm going to ask you a few questions now. Okay? Did you agree to assist Mr. Jenkins and possibly Mr. Porcher in the robbery of marijuana from Mr. Gillard? You don't necessarily need to know who Gillard was. But were you in an agreement to go down and assist in the robbery of some marijuana in the Santee area?
> Defendant: Yes, Your Honor.
> The court: Who asked you to help?
> Defendant: Porcher.
> …
> The court: And your idea or your agreement for going there was to assist Porcher and the others in robbing the marijuana from the people they were going to buy from?
> Defendant: Yes, Your Honor.
> …
> The court: Okay. All right. So then you end up over in Sumter at the Holiday Inn Express?
> Defendant: Yes, Your Honor.

13

The court: Okay. And by that point Porcher and Jenkins have gotten up with you all?
Defendant: Yes, Your Honor.
The court: Okay. And then at that point there is some dispute about Logan keeping the marijuana or not sharing the marijuana. Is that right?
Defendant: Uh-huh (affirmative).
…
Defendant: Really, I guess Jenkins was going to take it from Logan. Or I don't --
The court: Okay.
Defendant: We didn't really discuss it.
The court: Can you make that microphone go down a little lower? You said Jenkins was going to take the marijuana from Logan?
Defendant: Yes, Your Honor.
The court: Okay. And that was the plan, that he was going to basically rob Logan of the marijuana, take it by force?
Defendant: I guess. We didn't really talk about it.
The court: Okay. And what happened when he tried to do that?
Defendant: They exchanged gun fire.
The court: Okay. And where were you?
Defendant: Standing in front of the vehicle.
The court: Standing in front of the vehicle?
Defendant: Yes, Your Honor.
The court: Whose vehicle?
Defendant: The vehicle we was driving.
The court: The vehicle you had been driving?
Defendant: Yes, Your Honor.
The court: Okay. And were you going to assist him in taking marijuana from Logan?
Defendant: No, Your Honor.
The court: Okay. What were you there to do?
Defendant: Basically just driving.
The court: Driving who?
Defendant: Driving for Jenkins.
The court: So by that time you were driving Jenkins?
Defendant: Yes.
The court: And Jenkins was going to go try to rob the marijuana from Logan?
Defendant: I didn't know exactly whether he was going to go rob him or he was going to get his portion of it.
The court: But he thought he was owed a portion of the marijuana and he was going to get it one way or the other. Is that right?
Defendant: Yeah. I guess.
The court: Okay. All right. And at that point were you armed?
Defendant: Yes, Your Honor.
The court: And what were you carrying as far as a firearm?
Defendant: A .12 gauge shotgun.

14

> The court: Okay. And when the shooting started, did you shoot?
> Defendant: Yes, Your Honor.
> …
> The court -- I think he's driving him there and he is helping him get there so that he can get the marijuana. That's what I'm asking him.
> Defendant: Oh, yes.
> The court: Did you knowingly take him there knowing that he was going to one way or the other get his share of the marijuana?
> Defendant: Yes, Your Honor.
> The court: Okay. And did you know that -- did you expect that you were going to get some of that marijuana if he got some?
> Defendant: Yes. Yes, Your Honor.
> The court: Did you all have an arrangement, a specific arrangement as to how much you were going to be entitled to?
> Defendant: No.
> The court: Okay. You just knew he was going to get whatever he could get and you were going to split it with him --
> Defendant: Yes, Your Honor.
> The court: -- in some way?
> Defendant: Yes, Your Honor.
> The court: Okay. And was there any arrangement for him to pay you any cash or anything?
> Defendant: No, Your Honor.
> The court: It was just going to be the marijuana?
> Defendant: Yes, Your Honor.
> The court: Okay. And so then later you said you had a shotgun --
> Defendant: Yes, Your Honor.
> The court: -- at the Holiday Inn. Did you – how did you get the shotgun?
> Defendant: Before we went to Holiday Inn, we stopped by my apartment and I got it from there.

*Id.* at 66-75.

It is clear from the facts recited and from Defendant's admissions that the conduct underlying the possession of the firearm was not only a conspiracy to commit Hobbs Act Robbery but also a drug trafficking crime of attempted possession with intent to distribute marijuana. *See United States v. Crawley*, __ F.3d __, 2021 WL 2557790, at * 5 (4th Cir. June 23, 2021) (holding § 924(c) conviction properly rested upon a drug trafficking crime of attempted possession with intent to distribute cocaine and crack cocaine). Although Defendant arrived late to the initial

15

portion of the Hobbs Act Robbery of the marijuana from the seller, he then transported a co-defendant, Jenkins, to a secondary location, stopping to pick up his shotgun on the way. After arriving at the second location he fired his shotgun when gunfire was exchanged during Jenkins' attempt to take the marijuana from co-defendant Logan.

Defendant admitted he was aware of the initial robbery of between 39 and 50 pounds of marijuana by Logan and Vaughn, and then drove Jenkins to Sumter, where a shootout ensued between Logan's group and Jenkins' group for the marijuana proceeds of the robbery. ECF No. 469 at 74 ("The court: Did you knowingly take him there knowing that he was going to one way or the other get his share of the marijuana? Defendant: Yes, Your Honor. The court: Okay. And did you know that -- did you expect that you were going to get some of that marijuana if he got some? Defendant: Yes. Yes, Your Honor."). Although Defendant was not aware of an amount of marijuana he might receive for his role in the robbery conspiracy, and did not actually possess any drugs, 39 to 50 pounds of marijuana, evenly split between several robbery participants, is "far more than they would have needed for personal use." *Crawley*, 2021 WL 2557790, at *5.

Defendant did not actually possess the drugs either in Santee at the initial robbery (because he arrived late) or in Sumter, when a shoot-out ensued between the two sides of the robbery conspiracy. However, this is not dispositive under the recent Fourth Circuit case of *Crawley*, in which the court stated it had "little trouble finding a sufficient factual basis for [the defendant's] guilty plea to the § 924(c) offense in its entirety," when the defendants robbed a house they "believed" half a kilogram of cocaine would be in, "but for the intervening circumstance that the victim did not, in fact, have half a kilogram of cocaine in his house during the robbery." *Id.* at *6. Here, the marijuana was taken from Gillard and possessed by some members of the robbery conspiracy. But for the intervening circumstance of the shoot-out, in which multiple members of

16

the conspiracy were shot, Defendant would have possessed his cut of the marijuana. *See id.* ("[W]e neither find, nor need to find, the fact [the defendant] intended to distribute cocaine based on the quantity of drugs he intended to steal . . . [The defendant's] admission that he and his confederates attempted to steal a half a kilogram of cocaine is enough to sustain his conviction pursuant to a guilty plea for a § 924(c) offense expressly predicated upon a drug trafficking crime."). Similarly in this case, Defendant testified he expected to get some of the marijuana from the robbery in exchange for providing assistance to the robbery conspiracy. ECF No. 469 at 74

While Defendant pled guilty only to Counts 1 and 4, it was not necessary that Defendant be convicted of another offense, here a drug trafficking crime, for his § 924(c) conviction to rest on it. Section 924(c)(1)(A) notes, in part, the drug trafficking crime or crime of violence must be one "for which the person **may be** prosecuted in a court of the United States." *See also Crawley*, 2021 WL 2557790, at *5; *United States v. Crump*, 120 F.3d 462, 466 (4th Cir. 1997) ("In accordance with the views of all the circuits considering the question, we hold that a defendant's conviction under §924(c)(1) does not depend on his being convicted – either previously or contemporaneously – of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt.").

In this case, Defendant was indicted for conspiracy to commit Hobbs Act Robbery, aiding and abetting Hobbs Act Robbery, and aiding and abetting a drug trafficking crime. ECF No. 3. The facts and colloquy with Defendant at the change of plea hearing made it clear that there were sufficient facts for the §924(c) charge to be predicated on a drug trafficking crime. *See United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) ("A district judge must only be subjectively satisfied there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense."); *United States v. Edgerton*, 408 F. App'x 733, 736 (4th Cir. 2011)

(quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)) ("A district court judge taking a defendant's plea need not explain the elements of each charge to the defendant on the record."). In this case, the facts admitted are sufficient to support a plea to § 924(c) based on both conspiracy to commit Hobbs Act Robbery and an underlying drug trafficking crime.

Therefore, even though conspiracy to commit Hobbs Act Robbery can no longer serve as an underlying offense for Defendant's § 924(c) conviction after *Simms* and *Davis*, his §924(c) conviction was also based on a drug trafficking crime. *See United States v. Hare*, 820 F.3d 93, 105-06 (4th Cir. 2016) (upholding § 924(c) conviction where the conviction was based on both a drug trafficking crime and a crime of violence).

### IV. Conclusion

Defendant's §2255 motion is barred by the § 2255 waiver provision in Defendant's Amended Plea Agreement. Defendant also procedurally defaulted the current *Simms/Davis* claim by failing to raise it on direct review of his conviction. Finally, Defendant's challenge to his conviction under § 924(c) fails on the merits, even though conspiracy to commit Hobbs Act Robbery can no longer serve as an underlying offense, because the § 924(c) conviction remains properly predicated on a drug trafficking crime. Accordingly, the Government's motion for summary judgment (ECF No. 629) is granted and Defendant's § 2255 motion (ECF No. 617) is hereby **dismissed with prejudice**.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

    **IT IS SO ORDERED**.

    s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
July 15, 2021